UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES FORD, | ) | Case No. 1:07CV1225 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM ORDER** |
| SOCIAL SECURITY, | ) | **AND OPINION** |
| | ) | |
| Defendant. | ) | |

James Ford ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") committed legal error by : (1) determining that Plaintiff's carpal tunnel syndrome ("CTS") was not a severe impairment; (2) failing to give controlling weight to the opinion of the treating physician; and (3) failing to comply with the Agency's own rules in determining Plaintiff's residual functional capacity ("RFC"). ECF Dkt. #20. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case for additional factfinding and analysis consistent with this Opinion.

## I. PROCEDURAL AND FACTUAL HISTORY

On April 26, 2003, Plaintiff filed an application for DIB alleging disability resulting from CTS, liver damage, alcohol use, anemia, back pain, asthma, glaucoma, and psychiatric disorder. Tr. at 54, 58. Plaintiff's application was denied initially and on reconsideration. *Id*. at 50-53, 53-60. On July 20, 2004, Plaintiff filed a request for an administrative hearing. *Id*. at 61. On May 1, 2006, an ALJ conducted a hearing where Plaintiff appeared with counsel. *Id*. at 1390-1439. The ALJ received testimony from Plaintiff and a vocational expert. *Id*. On June 30, 2006, the ALJ issued a decision denying Plaintiff's claim. *Id*. at 12-23. On February 23, 2007, the Appeals Council denied Plaintiff's request for review. *Id*. at 6-8. On April 24, 2007, Plaintiff filed the instant suit seeking

review of the ALJ's decision. ECF Dkt. #1.

## II. SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION

The ALJ determined that Plaintiff suffered from the severe impairments of: residual effects from a bunionectomy; lower back pain without herniation; alcoholic liver disease; a psychosis; alcoholism in remission; and asthma. Tr. at 15. The ALJ found that Plaintiff's diabetes mellitus was not a severe impairment. *Id*. He further found that the residual effects of Plaintiff's CTS surgery were not severe because medical sources described them as mild and no objective medical evidence showed to the contrary. *Id*.

The ALJ further found that Plaintiff's alcoholism met the criteria of Listing 12.09 of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1) and after stopping his substance abuse, Plaintiff's remaining limitations caused more than a minimal impact on his ability to perform basic work activities and thus continued to be severe impairments. Tr. at 15-16. However, the ALJ found that after stopping substance abuse, Plaintiff did not have any impairment or combination of impairments that met or medically equaled the Listings. *Id*. at 16. He further found that since Plaintiff stopped substance abuse, he retained the RFC to perform a range of light work involving lifting, carrying, pushing and pulling up to ten pounds frequently and twenty pounds occasionally, sitting, standing/walking up to six hours of an eight-hour workday, and performing simple, routine, low-stress, nonpublic work that did not involve even moderate exposure to fumes, odors, dust, gases or poorly ventilated work areas. *Id*.

Based upon the RFC found by the ALJ, and the vocational expert's testimony that Plaintiff could perform a significant number of jobs existing in the economy, the ALJ concluded that Plaintiff was not disabled. Tr. at 22.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. **LAW AND ANALYSIS**

### A. **ISSUE I: ALJ'S STEP TWO DETERMINATION ON EFFECTS FOLLOWING CTS SURGERY**

Plaintiff first contends that the ALJ committed legal error in finding that the residual effects of his CTS surgery were not severe impairments at Step Two of the sequential steps for evaluating entitlement to social security benefits. ECF Dkt. #20 at 19.

At Step Two in the sequential analysis for evaluating disability, the ALJ determines whether a claimant's impairments are severe and whether they meet the durational requirement. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The Court must apply a de minimis standard in determining severity at Step Two. *Id.* at 862. An impairment or combination of impairments is not severe "...if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). The types of "basic work activities" that qualify for use in the regulations are described in 20 C.F.R. § 404.1521(b) and 20 C.F.R. 416.921(b). An impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir.1985). The non-severity step of the sequential evaluation process is simply an administrative convenience for screening out totally groundless claims. *Id.*

In the instant case, the ALJ provided adequate articulation for finding that the residual effects of Plaintiff's CTS surgery did not constitute severe impairments. In making his Step Two finding of nonseverity, the ALJ relied upon the findings of Dr. Waldbaum, a consultative examiner who found that Plaintiff had only "mild residua" following CTS surgery. Tr. at 15, citing Tr. at 488. The ALJ also indicated that no objective evidence, such as an EMG or a neurological examination, contradicted this finding. *Id*.

Plaintiff points to the "primary diagnosis" codes of CTS found on the Disability Determination and Transmittal forms as indicators that his residual effects were severe. ECF Dkt.

#20 at 18, citing Tr. at 50-51.  He also notes that Drs. Holbrook and Das acknowledged his CTS and listed it as the primary diagnosis in their assessments.  ECF Dkt. #20 at 18, citing Tr. at 495, 498, 764, 766.

This argument is rejected.  Although Step Two does not present a high standard, the mere diagnosis of a condition does not automatically constitute a severe impairment at Step Two because the diagnosis does not provide any information about a condition's severity.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  *Id.*  Accordingly, the presence of the "primary diagnosis" code of CTS on the agency forms does not in and of itself overcome the Step Two hurdle.  Tr. at 50-51.  Nor does the "acknowledgment" by Drs. Holbrook and Das that Plaintiff suffered from CTS because it conveys nothing about the severity of the conditions.  *Id.* at 495, 764.

Plaintiff also relies upon limitations set by Drs. Holbrook and Das, where Dr. Holbrook limited him to only occasional handling and Dr. Das limited his handling to frequently.  ECF Dkt. #20 at 18.  Plaintiff concludes that this shows that the residual effects had more than a minimal impact on his ability to work.  *Id.*  He also cites his consistent complaints of pain when using his hands, a neighbor's statement that she knew of Plaintiff's pain in using his hand and he had problems holding things, and a statement by Nurse Practitioner Rusterholtz to the Bureau of Vocational Rehabilitation ("BVR") that he was not to perform repetitive motions.  *Id.*

These facts do not overcome the Step Two hurdle.  Plaintiff shoulders the burden of producing objective medical evidence in order to show that the residual effects of his CTS caused functional limitations, that is, "significantly limited his ability to perform basic work activities." *Hibbard v. Astrue*, 537 F.Supp.2d 867, 84-876 (E.D. Ky. 2008), citing 20 C.F.R. § 404.1520(c).  While a claimant's subjective pain complaints must be considered, he must show "objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain."  *Id.*, citing 20 C.F.R. § 404.1529; *Bartyzel v. Comm'r. of Soc. Sec.*, 74 Fed. Appx. 515, 525 (6th Cir. 2003).

The ALJ considered the findings and limitations set by Drs. Holbrook and Das, who found limitations but nevertheless opined that Plaintiff could perform sedentary to light work.  Tr. at 19,

-5-

citing Tr. at 766.  The ALJ rejected their limitations involving manipulation, relying instead on the findings and opinions of Dr. Waldbaum, who placed no such limitations on Plaintiff's abilities to manipulate and grasp.  Tr. at 15, 489.  The ALJ can attribute more weight to the opinions of state examining physicians over that of state reviewing physicians because a state examining physician has met with the claimant and examined him.  *See* 20 C.F.R. § 404.1527(f)(2)(ii)("When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section") and 20 C.F.R. § 404.1527(d)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").  Accordingly, the ALJ in this case was justified in attributing more weight to the opinions of state examining physician Dr. Waldbaum, who found that Plaintiff's residual effects to be "mild" and found Plaintiff's ability to grasp, manipulate, pinch, and perform fine coordination to be "very functional no significant loss noted."  Tr. at 18, 489.  She placed no limitations on Plaintiff's dexterity or manipulative abilities, but rather limited him to sedentary-light work. Tr. at 488.

In addition, the ALJ considered Plaintiff's pain complaints in this case, as well as the statements of Nurse Rusterholtz.  He noted Plaintiff's testimony that his hands continued to cramp after the CTS surgery and that he suffered pain.  Tr. at 17.  He found that Plaintiff's medically determinable impairment could reasonably be expected to produce symptoms, but not to the extent that Plaintiff testified.  *Id.*  He properly discounted Plaintiff's complaints of pain because no objective medical evidence supported a severe limitation of residual effects following Plaintiff's CTS surgery. As noted by the ALJ, the Bureau of Disability Determination ("BDD") found that Plaintiff could perform light work.  Tr. at 19, citing Tr. at 765.  Further, while Dr. Waldbaum noted Plaintiff's sweating in the left palm and mildly positive Tinel's signs on both hands, she nevertheless found that he demonstrated normal sensory responses with minimal loss of sensation in the right palm and fingers, and an x-ray showed a normal right wrist.  *Id*. at 487, 493.  No EMG or other tests are cited by Plaintiff to support a contrary finding.  In addition, Dr. Waldbaum found that Plaintiff

would be capable of sedentary-light type work once he completed detoxification. *Id*. at 488. The ALJ's RFC corresponds to Dr. Waldbaum's conclusion as he limited Plaintiff to light work. Moreover, it appears that Plaintiff has been treated conservatively for his residual effects through medication.

The ALJ also noted Nurse Rusterholz's restrictions on Plaintiff abilities to lift, carry, push and pull only up to five pounds frequently and twenty pounds occasionally. Tr. at 18. However, he properly afforded only minimal weight to her opinions because her specialty and treating relationship with Plaintiff were not provided, and the regulations provide that nurse practitioners are not acceptable medical sources upon which controlling weight is given. *Id*.; 20 C.F.R. § 404.1502; 20 C.F.R. § 404.1513(d)(1). Nevertheless, the ALJ noted that Ms. Rusterholz's findings were similar to his own in that he limited Plaintiff to lifting, carrying, pushing and pulling up to twenty pounds occasionally. *Id.* at 17. Moreover, the record shows that when Nurse Rusterholz completed a medical source statement in April 2004, she indicated that Plaintiff was able to exertionally lift objects in the light range and noted no wrist limitations on Plaintiff's abilities. *Id*. at 1358-1363.

Lastly, Plaintiff argues that the ALJ should have relied upon the findings and conclusions of Vocational Guidance Services ("VGS") because they did extensive evaluations of his hands, fingers and arm movements in order to determine his functioning as to dexterity, work speed and accuracy in light of his CTS. ECF Dkt. #20 at 19, citing Tr. at 185, 189. Plaintiff notes that VGS testing revealed that his speed and accuracy were below competitive level. *Id.* at 191.

Plaintiff is correct that VGS results showed that his speed and accuracy were below a competitive level. Tr. at 191. However, the ALJ indirectly addressed the dexterity and manipulation abilities and their impact on Plaintiff's speed and accuracy in his decision when he discussed the hypotheticals that he and Plaintiff's counsel presented to the vocational expert. Tr. at 21-22. He cited counsel's hypothetical relating to the ability of a person to perform basic work activities as described by the ALJ with the ALJ's RFC and the additional restriction of the manual dexterity assessed of Plaintiff by VGS in percentile terms. *Id*. at 22. The ALJ noted that the vocational expert testified that he did not understand the interpretation of the percentiles, what they were measuring

-7-

or how it translated into the ability to perform basic work activities such as fine and gross motor control. *Id*. The ALJ then again noted that Dr. Waldbaum had examined Plaintiff and found that his dexterity and manipulative abilities were "very functional." *Id.*

Substantial evidence supports this determination. Dr. Waldbaum did note that Plaintiff's residual effects were "mild" and his abilities to perform grasping, manipulating, pinching and fine coordination were "very functional" and had "no significant loss." Tr. at 489. Without Plaintiff providing further explanation and analysis of the VGS test results, the ALJ appropriately relied upon the opinions and conclusions of Dr. Waldbaum, who conducted a physical examination and explained and supported her findings.

For these reasons, the Court finds that substantial evidence supports the ALJ's conclusion that the residual effects following Plaintiff's CTS surgery were not severe.

Even if one considers that the mild residuals of Plaintiff's CTS surgery were sufficient to meet the Step Two standard for severity, an ALJ does not commit reversible error in failing to find a specific impairment severe at Step Two if he finds a severe impairment on any condition and nevertheless proceeds through the sequential analysis and considers the other impairments in his RFC determination. *Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ did find that Plaintiff's had the severe impairments of effects from a bunionectomy, lower back pain without herniation, alcoholic liver disease, a psychosis, alcoholism in remission, and asthma, and he proceeded through the rest of the steps in the sequential analysis. The question then becomes whether the ALJ considered the effects following Plaintiff's CTS surgery in determining his RFC.

In articulating Plaintiff's RFC, the ALJ included limitations to performing light work of lifting, carrying, pushing and pulling up to ten pounds frequently and twenty pounds occasionally, and limitations to simple, routine tasks. Tr. at 17. He based this RFC mainly on "essentially normal objective findings" and he provided a preliminary review of the medical evidence relating to Plaintiff's conditions in his decision, including a review of Plaintiff's CTS and the residual effects following CTS surgery. He noted the limitations opined by agency reviewing physicians, Plaintiff's

own testimony, Nurse Rusterholz and VGS and he properly discounted them, relying upon a lack of objective medical evidence to support said limitations and the mild findings and sedentary/light work conclusions of Dr. Waldbaum, a state examining physician.

Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that the residual effects following Plaintiff's CTS surgery were not severe impairments.

### B.  ISSUE II:  OPINIONS OF DR. BOGAN

Plaintiff also contends that the ALJ erred when he failed to give controlling weight to the opinion of Dr. Bogan, Plaintiff's treating psychiatrist at the Veteran's Administration ("VA") Hospital. ECF Dkt. #20 at 19. He notes that Dr. Bogan found that Plaintiff had a moderate limitation in his abilities to interact with supervisors, deal with work stress, and maintain his concentration. *Id.* at 19-20. Plaintiff indicates that the term "moderate", as used by Dr. Bogan, meant "an impairment that affects the ability to function 17-32% in an eight hour day." *Id.* at 20. Plaintiff concludes that since the vocational expert testified that no jobs would be available if Dr. Bogan's mental RFC was used, the ALJ not only failed to comply with the law in evaluating her opinion, but he also lacked substantial evidence with which to reject Dr. Bogan's opinion and find him not disabled. *Id.*

With respect to Dr. Bogan's opinion, the ALJ indicated that he accorded significant weight to her opinions in Plaintiff's ability to perform work-related activities to the extent that they were supported by the record. Tr. at 18. He cited Dr. Bogan's findings that Plaintiff was moderately limited in interacting with supervisors, dealing with work stresses, and maintaining concentration and attention. *Id.* The ALJ also noted Dr. Bogan's findings that Plaintiff was mildly and moderately limited in sustaining a routine without special supervision, making simple work-related decisions, and completing a normal workday without interruption or an unreasonable number and length of rest periods. *Id.* He noted that Dr. Bogan had found that Plaintiff was mildly to moderately limited in responding appropriately to changes in the work setting, relating predictably in social settings, demonstrating reliability. *Id.* Finally, the ALJ cited Dr. Bogan's findings that Plaintiff had no limitations in understanding, remembering and carrying out simple instructions, responding

-9-

appropriately and getting along with supervision, co-workers or changes in the work setting, and in behaving in an emotionally stable manner. *Id.* at 19.

The opinions of treating physicians are generally afforded more weight than non-treating physicians because they are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it must be accorded controlling weight. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), citing 20 C.F.R. § 404.1527(d)(2). If an ALJ finds that a treating physician's opinion is not controlling, he must determine how much weight to give the opinion by considering numerous factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.* Even if not deemed controlling, a treating physician's opinion in most cases is still entitled great weight. *Wilson*, 378 F.3d at 544, citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188.

Moreover, an ALJ must provide "good reasons" for discounting the opinions of treating physicians, which means that he must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544, quoting SSR 96-2p. As explained in *Wilson*,

> The purpose of this procedural aspect of the treating physician rule is two-fold. First, the explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999))**. Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."** *Id***. Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected**

-10-

> **the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.** *Id.*

**378 F.3d at 544-545.  In addition, agencies such as the SSA are required to follow their own regulations, including SSR 96-2p.  *Id*.  [citations omitted].**

**The Court notes that Dr. Bogan's assessment of Plaintiff's ability to perform mental work-related activities is inconsistent and somewhat confusing.  Dr. Bogan finds that Plaintiff has moderate degrees of impairment in his abilities to respond appropriately to criticism from supervisors, deal with work stress, and to maintain attention and concentration.  Tr. at 1378. The term "moderate" is defined on the agency form as "[a]n impairment that affects ability to function 17-32% in an eight (8) hour day."  *Id*.  Dr. Bogan then checks both "none" and "mild" on Plaintiff's ability to perform activity within a schedule, maintain regular attendance, and be punctual within customary tolerances.  *Id.*  The form defines "none" as [n]o impairment in this area" and defines "mild" as [a]n impairment that affects ability to function less than 16% in an eight (8) hour day."  *Id*.  Dr. Bogan further checks "none", "mild" and "moderate" as to Plaintiff's abilities to sustain the ordinary routine without special supervision, to make simple work-related decisions, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform to a consistent pace without an unreasonable number and length of rest periods.  *Id*.  She also checks "none", "mild" and "moderate" for Plaintiff's abilities to respond appropriately to changes in the work setting, and to relate predictably in social situations.  *Id*.**

**Dr. Bogan explains the differing markings at the end of her assessment, indicating that "[o]n previous pages my initials reflect the chosen degree of impairment."  Tr. at 1380.  Dr. Bogan placed her initials next to "mild" for Plaintiff's ability to perform activity within a schedule, maintain regular attendance, and be punctual within customary tolerances.  *Id.* at 1378.  According to her explanation, Dr. Bogan must have meant that Plaintiff's ability in this case was mildly impaired rather than not impaired at all.  However, as to Plaintiff's abilities to sustain the ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and week without interruptions from psychologically**

**based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods, respond appropriately to changes in the work setting, and relate predictably in social situations, Dr. Bogan has placed her initials on both "mild" and "moderate".** *Id.* **at 1378-1379.**

**It is unexplained as to what Dr. Bogan meant when she checked and initialed both "mild" and "moderate" as they are mutually exclusive. If she checks "mild", then Plaintiff's abilities are not limited to a moderate degree. If she checks "moderate", then Plaintiff's abilities are not limited to a mild degree. Consequently, the extent of Plaintiff's limitations in those areas are unable to be determined.**

**Further, some of Dr. Bogan's conclusions are inconsistent with the rest of the items that she checked on her form. For instance, Dr. Bogan opined that Plaintiff was moderately impaired in his ability to "deal with work stress", and his condition would likely deteriorate if he was placed under job stress, but on the next page she indicated that Plaintiff had no impairment in "responding to work customary pressures." Tr. at 1378-1379. Dr. Bogan also opined that Plaintiff was "mildly" or "moderately" impaired in making simple work-related decisions, but she indicated on the next page that he had no impairment in using good judgment, performing simple tasks, or responding appropriately to changes in the work setting.** *Id.* **She also found that Plaintiff was either "mildly" or "moderately" limited in responding appropriately to changes in the work setting, but down below on the same page, she also indicated that Plaintiff had no impairment in responding appropriately to changes in the work setting.** *Id.* **at 1379. Dr. Bogan also found that Plaintiff had a moderate degree of impairment in his ability to respond appropriately to criticism from his supervisors, but on the next page found that he had no impairment in responding appropriately to supervision.** *Id.* **at 1378-1379.**

**Nevertheless, the ALJ indicated in his decision that he afforded "significant" weight to Dr. Bogan's opinion as to Plaintiff's abilities. Tr. at 19. The ALJ did not afford "controlling" weight to Dr. Bogan's opinion as to Plaintiff's abilities and fails to provide adequate reasons for not doing so. He does not note any of the inconsistencies of Dr. Bogan's**

assessment in his decision. He merely reviews the opinion and indicates that it is supported by "the assessment of psychologist Graham D. Young, Ph.D., who supported Mr. Ford's desire to return to work." Tr. at 19. However, the citations that the ALJ provides to that part of the record containing Dr. Young's supposed support provide no support for limitations or a return to work. Dr. Young is psychologist at the VA that conducted an assessment of Plaintiff on October 4, 2004. Dr. Young's records which are cited by the ALJ merely show a review of his assessment of Plaintiff, including his presenting problems, a mental status examination, mental health history, substance use history, his medical history, current medications, allergies, military history, living situation, financial issues, vocational situation, legal issues, diagnoses, global assessment of functioning, and the treatment plan. *Id.* at 1076-1079, 1305-1309. The only reference relating to a return to work is contained in the "Plan" portion of the assessment in which Dr. Young states "[d]iscussed treatment options with pt. He was interested in referrals for medication evaluation and to a social worker to deal with his lack of material resources. He also wanted to pursue counseling with this writer. He has already been referred to a voc. rehab. counselor." *Id*. at 1079, 1309. Dr. Young's assessment provides no support for either the ALJ's evaluation or Dr. Bogan's assessment.

Further, the ALJ reviewed the hypothetical persons presented by Plaintiff's counsel to the vocational expert, some of whom had the "moderate" limitations opined by Dr. Bogan. In the third hypothetical person, Plaintiff's counsel kept the ALJ's RFC of light, simple, routine, low-stress, non-public work with avoidance of even moderate exposure to fumes, odors, dust, gasses and poorly ventilated work areas. Tr. at 22, 1436. He then added a moderate limitation (that is, 17-32% limitation as found by Dr. Bogan in her assessment) in the ability to interact with supervisors, including the ability to accept instructions and the ability to respond appropriately to criticism. *Id.*  In his fourth hypothetical person, Plaintiff's counsel kept the ALJ's RFC and added a moderate limitation (17-32% limitation) in the ability to deal with work stress. *Id*. For his sixth hypothetical person, Plaintiff's counsel again kept the ALJ's RFC and added a moderate limitation (17-32%) in the person's ability to maintain concentration and attention. *Id*. As to each of these hypothetical persons with each

-13-

"moderate" limitation, the vocational expert testified that such a person would be barred from competitive employment. Tr. at 1436.

In rejecting the limitations proffered by Plaintiff's counsel for the third, fourth and sixth hypothetical persons, the ALJ merely stated that the evidence did not support a conclusion that Plaintiff would be unable to deal with work stress, deal with supervisors, or maintain concentration and employment "almost 20%" of the time or "20% of a workday." Tr. at 22. The ALJ does not explain the calculation of "20%" and fails to discuss the "evidence" that did not support the limitations proffered by Plaintiff's counsel.

Based upon the ALJ's failure to adequately articulate the reasons behind the weight given to Dr. Bogan's opinion, and relatedly, his failure to identify and discuss the "evidence" that did not support the limitations in the hypothetical persons presented by Plaintiff's counsel, the Court finds that substantial evidence does not support the weight attributed to Dr. Bogan's opinion.

Accordingly, the Court finds merit to Plaintiff's second issue and remands the instant case for further factfinding and analysis by the ALJ as to the weight given to Dr. Bogan's assessment.   C.   **ISSUE III: RFC**

In his third argument, Plaintiff asserts that the ALJ committed legal error when he determined that Plaintiff's mental RFC included limitations to low-stress, simple, routine, non-public tasks. ECF Dkt. #20 at 24. Plaintiff contends that the only evidence as to Plaintiff's ability to handle stress, criticism and concentration was the assessment of Dr. Bogan and the ALJ's RFC did not accommodate Dr. Bogan's conclusions. *Id.*

The Court finds that this issue is related to Plaintiff's second issue because it is based upon Dr. Bogan's assessment of Plaintiff's mental RFC. Since the Court is remanding this case due to the ALJ's inadequate articulation of the weight given to Dr. Bogan's assessment, the instant issue is also remanded for consideration by the ALJ.

**VI.   CONCLUSION**

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for further factfinding, analysis, and articulation consistent with

-14-

**this opinion.**

      **IT IS SO ORDERED.**

**Date: August 13, 2008**　　　　　　　　　　　　　　　　　_/s/George J. Limbert_
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**GEORGE J. LIMBERT**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**